# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERTO GARCIA and LA CIMA, INC., <br> d/b/a LA CIMA, LLC, <br> d/b/a TRUCKNATION SALES, INC., <br> d/b/a TRUCKNATION, <br><br> *Plaintiffs*, <br><br> v. <br><br> MAXIM COMMERCIAL CAPITAL, LLC, <br><br> *Defendant*. | § § § § § § § § § § § § § | CIVIL ACTION H-16-3550 |

**MEMORANDUM OPINION & ORDER**

Pending before the court are (1) defendant Maxim Commercial Capital, LLC's ("Maxim") motion for summary judgment (Dkt. 13); and (2) Maxim's motion to strike (Dkt. 16). The motion to strike is contained within Maxim's reply to the plaintiffs' response to Maxim's motion for summary judgment. Dkt. 16. Having considered the motion for summary judgment, response, reply and motion to strike, surreply, record evidence, and applicable law, the court finds that Maxim's motion for summary judgment should be GRANTED IN PART and DENIED IN PART and Maxim's motion to strike should be GRANTED.

## I. BACKGROUND

This case relates to a contract between Maxim, a commercial finance company, plaintiff La Cima LLC, d/b/a Trucknation ("Trucknation"), a Texas commercial vehicle dealership, and plaintiff Roberto Garcia, the owner and operator of Trucknation. Dkt. 1-2 (original petition). These parties entered into a Vendor Recourse Agreement ("VRA") on October 30, 2013. Dkt. 13, Ex. A-1. Under the terms of the VRA, Garcia and Trucknation acted as guarantors for Equipment Finance

Agreements ("EFAs") entered into by Maxim and obligors who purchased trucks and personal property from Trucknation. *Id.* The VRA specifically noted that the EFAs would be "identified as from signing date of this agreement forward hereto, and attached to this agreement from time to time as Exhibit 'A'." *Id.* The VRA also set forth Garcia and Trucknation's responsibilities as guarantors, stating that if Maxim notified them of a default, they would pay Maxim the Guaranteed Balance of the Agreement. *Id.*

After entering into the VRA, Maxim entered into at least four EFAs with obligors. Dkt. 13, Exs. A-2, A-3, A-4, A-5. The copies of the EFAs supplied to the court by Maxim all have a title page labeled "EXHIBIT A: VENDOR RECOURSE AGREEMENT." Dkt. 13, Exs. A-2, A-3, A-4, A-5. The copies of the EFAs supplied by Trucknation, which it contends were sent by Maxim along with a demand letter before Trucknation filed suit, include a page entitled "EXHIBIT A: VENDOR RECOURSE AGREEMENT," but it is not the first page of these exhibits. Dkt. 14 at 4 n.1; Dkt. 14, Exs. A–D. Individuals who worked at Trucknation signed each EFA on the page marked "EXHIBIT A" in a spot labeled "Acknowledged: TRUCKNATION." Dkt. 13, Exs. A-2, A-3, A-4, A-5. Maxim's custodian of records provided an affidavit in which he testifies that the EFAs were attached to the VRA as they were executed. Dkt. 13, Ex. A ¶ 16. Maxim funded the EFAs, and the Trucknation customers defaulted within the first calendar year. *Id.* ¶¶ 17–18. Trucknation initially made the monthly payments on the defaulted EFAs, but it discontinued doing so after multiple customers defaulted. *Id.* ¶ 19. Maxim contends that, as of October 21, 2016, Trucknation owes Maxim $165,857.10 for the defaulted loans.

On November 2, 2016, Garcia and Trucknation filed an original and amended petition against Maxim in the 215th Judicial District Court in Harris County, Texas. Dkt. 1-2. The amended petition

seeks a declaratory judgment that (1) the VRA does not incorporate the EFAs; (2) the EFAs do not incorporate the VRA; and (3) neither Trucknation nor Garcia is the guarantor under the EFAs entered into between Maxim and Trucknation customers. *Id.* Garcia and Trucknation also seek attorneys' fees. *Id.*

On December 2, 2016, Maxim removed the case to this court pursuant to 28 U.S.C. § 1332. Dkt. 1. On December 7, 2016, Maxim filed an answer and counterclaims against Garcia and Trucknation for breach of contract and promissory estoppel. Dkt. 3. Maxim also requested attorneys' fees. *Id.* Garcia and Trucknation did not file an answer to the counterclaims. *See* Dkt. (Dec. 7, 2016 through Dec. 29, 2016); Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.").

On June 30, 2017, Maxim filed the instant motion for summary judgment, arguing that the summary judgment evidence affirmatively establishes each element of Maxim's breach of contract and promissory estoppel claims and that it is entitled to attorneys' fees. Dkt. 13. Maxim also argues that Garcia and Trucknation's claim for a declaratory judgment fails as a matter of law because the VRA and the EFAs fully incorporate each other. *Id.* Maxim requests a final judgment in its favor of $165,857.10 and a dismissal of all claims asserted by Garcia and Trucknation. *Id.*

Garcia and Trucknation oppose Maxim's motion, asserting that the only promise Trucknation made in the EFAs was to register Maxim as a lienholder with the State Department of Motor Vehicles and that a Trucknation employee signed each agreement as a notary and witness. Dkt. 14. Garcia and Trucknation note that these signatures were in a spot labeled "acknowledged" not "agreed." *Id.* Garcia and Trucknation agree that the customers defaulted, and they contend that

Maxim eventually abandoned the collection effort and chose not the repossess the customers' collateral. *Id.* Garcia and Trucknation contend that the VRA and EFAs do not incorporate each other, as incorporation by reference requires more than merely mentioning a document. *Id.* Moreover, they assert that the debts in question had to be in existence at the time the agreement was executed in order to comply with the statute of frauds. *Id.* Garcia and Trucknation also contend that the promissory estoppel exception to the statute of frauds does not apply. *Id.*

Maxim filed a reply. Dkt. 16. It asserts first that Garcia and Trucknation's assertions relating to Maxim's collection and pursuit of the underlying debt are not supported by an affidavit or any evidence, and it moves to strike these statements. *Id.* It then argues that the uncontroverted summary judgment evidence conclusively establishes that the EFAs were attached to the VRA. *Id.* And it asserts that the statute of frauds does not apply because the facts of this case comply with the partial performance exception to the statute of frauds. *Id.* It also argues that even if the exception did not apply, the EFAs themselves are writings that comply with the statute. *Id.*

Garcia and Trucknation filed a surreply. Dkt. 20. They assert that the facts in their response relating to Maxim's collection efforts are fully supported by the demand letter Maxim sent to Trucknation on October 25, 2016, which Maxim attached as Exhibit A-8 to its motion for summary judgment. *Id.* They also provide additional argument regarding whether the agreements incorporate each other, asserting that neither agreement incorporates the other by plain reference. *Id.* Additionally, they argue that Maxim has not met its burden to prove the partial performance exception to the statute of frauds. *Id.*

The motion for summary judgment is now ripe for disposition.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

The court will first address Maxim's motion to strike, which is contained in its reply to Garcia and Trucknation's response. Then, it will address the substantive issues raised in the motion for summary judgment. With regard to those substantive issues, the parties only dispute the legal significance of the content of the EFAs and the VRA. The court will address three claims: (1) Maxim's breach of contract claim and Garcia and Trucknation's parallel argument for declaratory judgment on that claim; (2) Maxim's alternative claim for promissory estoppel; and (3) both parties' claims for attorneys' fees.

### A. Motion to Strike

Maxim moves to strike Garcia and Trucknation's assertions regarding Maxim's efforts to collect debt from the obligors and Maxim's efforts to pursue the obligors' collateral, arguing that

there is no evidentiary support in the record for these assertions. Dkt. 16. Garcia and Trucknation contend that these facts are supported by Maxim's demand letter that Trucknation attached as an exhibit to its motion for summary judgment. Dkt. 20. That letter does not clearly assert that Maxim did not attempt to collect the debt or obtain collateral. *See* Dkt. 13, Ex. A-8. However, the court assumes that Garcia and Trucknation are referring to the fact that the letter does advise Garcia of the following "key term" in the VRA stating that the contract does not "obligate Maxim to take any action with respect to the Equipment or with respect to any Event of Default. Maxim's right to require Guarantors to pay the Guaranteed Balance shall be unaffected by . . . the condition or location of the Equipment or any other circumstances." *Id.* The VRA, indeed, states: "Nothing herein shall obligate Maxim to take any action with respect to the Equipment or with respect to any Event of Default." Dkt. 13, Ex. A-1. Thus, it appears that the statement is actually not even relevant to this claim.

Regardless, the court finds that there is no support in the record for Garcia and Trucknation's statements regarding Maxim's actual efforts, or lack thereof, to collect from the obligors. Instead, there is simply a record of what the contract required of Maxim in this regard: nothing. Maxim's motion to strike (Dkt. 16) is GRANTED.

**B.     Breach of Contract**

In pleading a breach of contract, a plaintiff generally must plead facts showing: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

The primary issue whether the EFAs are part of the parties' agreement. The parties do not dispute that Maxim performed its duties under the VRA by financing each of the debtors' purchases of Trucknation vehicles and equipment. *See* Dkts. 13, 14. Additionally, neither party disputes that four debtors defaulted on their respective EFAs. Dkts. 13, 14. Neither party disputes that Trucknation failed to pay Maxim on all the defaults, or that Maxim was damaged by the defaults. Dkts. 13, 14. However, Garcia and Trucknation argue that they did not agree to pay Maxim if the customers defaulted; Maxim disagrees. Dkts. 13, 14.

The parties disagree about (1) whether the VRA and the EFAs incorporate each other; and (2) whether Trucknation was a party to the EFAs. Dkt. 14. Additionally, Garcia and Trucknation contend that the VRA does not satisfy the statute of frauds. Dkts. 14, 20. The court first addresses the issue of incorporation, then addressees whether Trucknation was party to the EFAs, and lastly the court addresses the statute of frauds defense.

1.  **Incorporation**

Both parties agree that, "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed by the defendant plainly refers to another writing . . . [S]everal instruments may be read together when it appears from their terms that they necessarily relate to the same transaction." *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); Dkts.13, 14. The parties disagree whether the VRA and the EFAs relate to the same transaction. Dkts. 13, 14.

Garcia and Trucknation claim that the EFAs did not incorporate the VRA, and therefore they did not breach the VRA when the debtors defaulted on their payments to Maxim and Garcia and Trucknation refused to pay. Dkt. 13. Garcia and Trucknation additionally assert that the EFAs were

7

not incorporated in the VRA by reference. *Id*. Garcia and Trucknation argue that "[t]he absence of such a reference within the signed document 'shows that the parties did not intend to contract with reference to the other instrument.'" Dkt. 14 (citing *Trico Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston (1st Dist.) 2002, no pet.)). Garcia and Trucknation rely heavily on the First Court of Appeals in Houston opinion in *Trico Marine Services v. Stewart & Stevenson Technical Services*; in which the court held that the mere mention of the words "General Terms and Conditions of Sale" in the table of contents of an agreement and as the heading of a section in the agreement did not plainly refer to a separate document. *See* 73 S.W.3d at 550; Dkt. 14. Accordingly, Garcia and Trucknation argue that "Exhibit A Vendor Recourse Agreement," which was at the top of each EFA, was insufficient to incorporate the EFAs into the VRA. Dkt. 14; *see* Dkt. 13, Exs. A-1, A-2. In addition, Garcia and Trucknation argue that the EFAs were not physically attached to the VRA at "the time of contracting" and that the lack of attachment is relevant to determining whether the documents were incorporated. Dkt. 20 at 3–4 (quoting *Trico* 73 S.W.3d at 551).

Maxim disagrees, arguing that the VRA and the EFAs are part of the "same transaction" and Garcia and Trucknation are thus bound to pay Maxim on the guarantees. Dkt. 14 (citing *Owen*, 433 S.W.2d at 166). Maxim points out that the VRA refers explicitly to the EFAs and that each EFA was labeled "Exhibit A" in accordance with the terms of the VRA. Dkt. 14 at 10 & Exs. A-1, A-2, A-3, A-4, A-5. Thus, Maxim argues, "it is clear from these documents that the parties' intent as expressed in the terms of these agreements were that they operate together." Dkt. 14 at 10.

The court agrees with Maxim. Incorporation requires a connection between the documents expressed either by reference to each other or by reference to the same transaction. *Douglass v. Tex.-*

*Canadian Oil Corp.*, 174 S.W.2d 730, 31 (Tex. 1943). The VRA states that Garcia and Trucknation are guarantors "for the [EFAs] (each an 'Agreement') identified as from signing date of this agreement forward hereto, and attached to this agreement from time to time as Exhibit 'A'." Dkt. 14, Ex. A-1 ¶ 1. The VRA manifests the intent of the parties to incorporate and attach future EFAs by labeling them "Exhibit A." *See* Dkt. 14, Exs. A-2, A-3, A-4, A-5. Each EFA reads in bold, "Exhibit A Vendor Recourse Agreement" at the top of the first page. Dkt. 14, Exs. A-2 at 12, A-3 at 27, A-4 at 38, A-5 at 50. Furthermore, each EFA, together with the VRA, necessarily relates to the same transaction between Maxim and Garcia and Trucknation. *See Owen*, 433 S.W.2d at 166. Moreover, if the EFAs were not incorporated into the VRA, the VRA would be meaningless, and Garcia and Trucknation would have agreed to guarantee nothing. *Cf. Blaylock v. Am. Guarantee Bank Liability Ins. Co.*, 632 S.W.2d 719, 722 (Tex. 1982) ("A contract will not be construed so as to render some of its terms meaningless.").

On the issue of attachment and incorporation, Garcia and Trucknation rely on *Trico* to support their arguments, but they do not mention another case discussed in *Trico* that relates more directly to the instant case. In *Trico*, the court determined that merely mentioning "General Terms and Conditions of Sale" in a table of contents and as a heading did "not plainly refer, as a matter of law, to any separate document." *Trico*, 73 S.W.3d at 549. The *Trico* court, however, distinguished its facts from those in *Castroville Airport, Inc. v. City of Castroville*. *Id.* at 550. The court in *Castroville Airport* held that an agreement "plainly referring to documents 'attached [as] Exhibit A' and 'attached as Exhibit B' incorporated those exhibits by reference, even if the parties disputed whether the exhibits were actually attached." *Trico*, 73 S.W.3d at 550 (quoting 974 S.W.2d 207,

211–12 (Tex. App.—San Antonio 1998, no writ)). Similarly, here, the statement of attachment by reference in the VRA was sufficient to incorporate each of the EFAs into the VRA.

The court holds that the VRA incorporated each of the EFAs by reference.

### 2. Party to the Agreement

Garcia and Trucknation argue that Trucknation was not a party to the EFAs and that Trucknation's employees only signed each EFA as a notary or witness. Dkt. 14 at 7. Garcia and Trucknation assert that "there is no language whatsoever that gives any indication that Trucknation is assuming the duties, rights, or responsibilities of a Guarantor under the EFA." *Id*. Rather, "[h]ad Maxim included the two-page vendor 2013 Recourse Agreement with each EFA, and obtained Robert Garcia's and Trucknation's signatures, a Guarantor obligation may have been created." *Id*.

Maxim argues that Garcia and Trucknation concede that if the VRA was attached to the EFAs, then Garcia and Trucknation had obligations to Maxim as guarantors. Dkt. 16 at 2–3 (citing Dkt. 14 at 10). Maxim notes that its custodian of records testified via affidavit that the EFAs were marked "EXHIBIT A VENDER RECOURSE AGREEMENT" and attached to the VRA. Dkt. 13 & Ex. A.

Garcia and Trucknation point out that the testimony of Maxim's custodian of records indicates, at best, that the VRA *may* have been attached at the time the EFAs were executed, but the evidence in this case—namely the EFAs that are in evidence—do not have the VRA attached. Dkt. 20. Garcia and Trucknation assert that the relevant question is whether the document was attached at the time of contracting, and the evidence here indicates that it was not. *Id.*

Regardless of the timing of attachment, the court holds that Trucknation was a party to the EFAs. Though the VRA contemplates the incorporation of the EFAs and the VRA would be

rendered meaningless if the EFAs were not incorporated, the record contains even more evidence that Trucknation was a party. Dkt. 13, Ex. A-1. On December 29, 2014, Beatrice Rodriguez signed for Trucknation on EFA No. TR3435 as a member of "Finance." Dkt. 13, Ex. A-3 at 27. On April 30, 2015, Mary Lou Rocha signed EFA No. 3845 as Trucknation's "Finance Manager." Dkt. 13, Ex. A-2 at 12. On May 22, 2015, Beatrice Rodriguez signed for Trucknation on EFA No. TR3922 as a member of "Finance." Dkt. 13, Ex. A-4 at 38. On July 6, 2015, Beatrice Rodriguez signed for Trucknation on EFA No. TR4033 as a member of "Finance." Dkt. 13, Ex. A-5 at 50. Each signature appears on the front page of each EFA under the title, "Exhibit A Vendor Recourse Agreement," and indicates Trucknation's acknowledgment of each EFA. Dkt. 13, Exs. A-2 at 12, A-3 at 27, A-4 at 38, A-5 at 50. Clearly, when signing this document, these Trucknation employees were acknowledging that the EFAs were being incorporated into the VRA, as the EFAs were marked just as the VRA, which was signed by Garcia, contemplated.

The court holds that Trucknation was a party to each EFA as it was incorporated into the VRA.

### 3. Statute of Frauds Defense

Garcia and Trucknation raise a statute of frauds defense for the first time in their response to Maxim's motion for summary judgment. Dkt. 14. Garcia and Trucknation argue that the statute of frauds applies to guaranty agreements. *Id*. (citing Tex. Bus. & Com. Code Ann. § 26.01). They then argue that the EFAs were not in existence at the time of the writing of the VRA. *Id.* Because the VRA did not identify the debtor at the time of signing, the contract must fail automatically under the statute of frauds. *Id.*

Maxim argues that the statute of frauds does not apply because partial performance renders the defense unavailable. Dkt. 16 (citing *Stovall & Assoc., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 800 (Tex. App.—Dallas 2013, no pet.)). Maxim asserts that so long as the actions that constitute partial performance are referable to the agreement and corroborate the existence of that agreement, then the statute of frauds defense does not apply. *Id.* Since Trucknation initially tendered monthly payments pursuant to the terms of the VRA, Maxim argues, Trucknation's actions constitute partial performance. Dkt. 16 (citing Dkt. 13, Ex. 1 at 6). In addition, Maxim argues that because the EFAs are also writings signed by the parties sought to be charged, the statute of frauds does not apply. *Id.*

In a diversity case, like this one, substantive state law determines what constitutes an affirmative defense. *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) (citing *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986)). The statute of frauds is an affirmative defense under Texas law. Tex. R. Civ. P. 94. It is an affirmative defense that must be specially pled, and fair notice of the affirmative defense is required. *See* Fed. R. Civ. P. 8(c); *Automated Med. Labs. v. Armour Pharm. Co.*, 629 F.2d 1118, 22–23 (5th Cir. 1980). The first problem with Garcia and Trucknation's statute of frauds argument, then, is that Garcia and Trucknation did not affirmatively plead the statute of frauds.

However, even if Garcia and Trucknation had pled the statute of frauds, their argument would fail. The defense does not apply. The statute of frauds requires a written memorandum, "merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him. The written memorandum may be made after the agreement." *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1986, no writ) (internal citations omitted). Both the VRA and the EFAs were signed writings, which evidence the transactions. Thus, the statute of frauds defense does not apply.

The court holds that Garcia and Trucknation's statute of frauds defense does not apply to its transactions with Maxim. The court holds that Garcia and Trucknation breached their contract with Maxim on each of the defaulted EFAs. Maxim's motion for summary judgment on its breach of contract claim is GRANTED. Maxim is entitled to recover actual economic damages in the amount of $165,857.10.

C. **Promissory Estoppel**

A party can only be successful on a promissory estoppel claim where no valid contract exists. *Doctors Hosp. 1997, L.P. v. Sambuca Hous., L.P.*, 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, pet. abated). Since a valid contract exists in this case, Maxim's promissory estoppel claim does not apply.

Maxim's motion for summary judgment on its promissory estoppel claim is DENIED.

D. **Trucknation's Request for a Declaratory Judgment**

Maxim requests that the court enter summary judgment in its favor and dismiss Garcia and Trucknation's claim for a declaratory judgment. Dkt. 14. Since the court has granted Maxim's motion for summary judgment on its breach of contract claim in Maxim's favor, it consequently GRANTS Maxim's motion for summary judgment on Garcia and Trucknation's request for a declaratory judgment that the VRA and EFAs do not incorporate each other and that neither Trucknation nor Garcia are guarantors under the EFAs. Garcia and Trucknation's declaratory judgment claim is DISMISSED WITH PREJUDICE.

E. **Attorneys' Fees**

Both parties have requested attorneys' fees in this matter. Since Maxim has prevailed on its breach of contract claim and the court has dismissed Garcia and Trucknation's only claim, Garcia and Trucknation's request for attorneys' fees is DENIED.

Maxim requests $10,000.00 in attorneys' fees. Dkt. 13. Under Texas Civil Practices and Remedies Code section 38.001, a party that recovers for a breach of contract claim in Texas is entitled to recover its attorneys' fees. Maxim contends that $10,000.00 are reasonable and necessary attorneys' fees, and it attaches an affidavit of its attorney asserting that Maxim has incurred attorneys' fees of $10,000 in this case, and that those fees were incurred because Maxim's attorney drafted the notice of removal, the statement regarding removed cases, the original answer and counterclaims, the disclosure statement, the joint ADR report, the report of Rule 26f conference, the agreed Rule 16 scheduling order, and the motion for summary judgment. Dkt. 13, Ex. B. Additionally, its counsel attended the Rule 26f conference. *Id.* He states that the fees were calculated at $310.00 per hour and that a fee of $10,000.00 is reasonable and customary for the services rendered. *Id.*

The court finds that $10,000.00, which equates to just over 32 hours of work at $310.00 an hour, is a reasonable fee for the work Maxim's counsel has performed in this case. Accordingly, Maxim's request for attorneys' fees amounting to $10,000.00 is GRANTED.

**F.     Prejudgment Interest**

Maxim requests prejudgment interest at a rate of eight percent from October 21, 2016, through judgment. Dkt. 13. "The prevailing plaintiff in a contract case tried under Texas law is entitled to an award of prejudgment interest in all but exceptional circumstances." *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987); *see also, e.g.*, *Joy Pipe, USA, L.P. v. ISMT Ltd.*, No. 16-20293, 2017 WL 3080901, at *2 (5th Cir. July 19, 2017) (per curiam) (reiterating the Fifth Circuit's interpretation of Texas law on this matter as requiring equitable prejudgment interest "as a matter of course, absent exceptional circumstances"). The VRA sets an

interest rate of eight percent per annum. Dkt. 13, Ex. A-1. The court therefore finds that Maxim is entitled to prejudgment interest and that eight percent is the appropriate prejudgment interest rate.

G.      **Post-Judgment Interest**

Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." Under § 1961(b), this interest "shall be computed daily to the date of payment, " with some exceptions, "and shall be compounded annually." Maxim is entitled to post-judgment interest in accordance with this statute.

## IV. CONCLUSION

Maxim's motion to strike contained in its reply (Dkt. 16) is GRANTED.

Maxim's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to its breach of contract counterclaim and Garcia and Trucknation's declaratory judgment claim. Trucknation's claim is DISMISSED WITH PREJUDICE. Since the court finds there is a valid contract and will enter judgment in Maxim's favor on the contract, Maxim's request for summary judgment on its promissory estoppel counterclaim is DENIED. The promissory estoppel claim is DISMISSED WITH PREJUDICE.

Maxim's request for attorneys' fees is GRANTED, and Trucknation's request for attorneys' fees is DENIED. Maxim's request for conditional attorneys' fees, which is discussed in its attorneys' affidavit and proposed order and refers to appeals to the Texas Supreme Court rather than the Fifth Circuit, is DENIED. *See* Dkt. 13, Ex. B (affidavit) (noting that the attorneys' fees "are expected to be $10,000.00 if appealed to the Texas Court of Appeals, $5,000.00 if a petition for

review is sought with the Texas Supreme Court, and $5,000.00 is a petition for review is granted"); Dkt. 13-2 (proposed order) (providing for an award of conditional attorneys fees if Maxim prevails on appeals at the Court of Appeals and the Texas Supreme Court).

Maxim is entitled to a judgment of actual damages amounting to $165,857.10, prejudgment interest from October 21, 2016, at a rate of eight percent through judgment, attorneys' fees of $10,000.00, court costs, and post-judgment interest as required by 28 U.S.C. § 1961. The court will enter a separate final judgment concurrently with this order.

Signed at Houston, Texas on October 27, 2017.

_____
Gray H. Miller
United States District Judge